Johnson, J.
This action is brought by the plaintiff, to recover damages, alleged to have been caused by the want of proper care and skill of the agents and servants of the defendant, a company owning and opei’ating a street railroad in Cincinnati. It is averred that the plaintiff was a *25 passenger to be carried from Fifth street near Yine to the corner of Fourth and Main streets, for a certain hire or reward, and while being so carried, the defendant, by its servants and agents, so carelessly, negligently, and unskillfully conducted the running of the car, that, without fault •on his part, the plai ntiff was thrown from the car to the ground, and the wheels of the car ran over and injured him.
The answer denies all the allegations of the petition, except that the defendant is an incorporated company, and the owner of the railroad.
The case was tried to a jury at special term, and verdict rendered for defendant. On motion for a new trial, which was overruled, a bill of exceptions was taken, and the case went to the general term on error, when the judgment was affirmed.
Did the superior court err in affirming this judgment? The bill of exceptions shows several errors were relied on below, part only of which need be noticed.
The plaintiff, to maintain the issue on his part, offered evidence tending to show that the plaintiff was twelve years old, and was, at the time engaged in selling newspapers .along the streets of Cincinnati; that it was customary for the newsboys to get on the ears to sell papers, and ride free of charge; that on the morning when this injury happened, he had got on the front platform of a car going east along Fifth street, and was about to enter the car, when the driver demanded his fare; that plaintiff told him he had none; that the driver then ordered him off, and then shoved or threw him off, while the horses were going in a trot, and the wheels passed over him and caused the injuries complained of.
The defendant’s evidence tended to show that the driver did not demand fare of the plaintiff, or throw or shove him off; that the boy got on the front platform where there was no one but the driver, went to the door and called. “ papers,” then returned to the steps, suspended himself by the iron rod, and in some way unknown to the driver, while he was engaged in driving, and without his fault, *26 the boy fell off and was run over, before it was known by the driver, or the conductor, who was on the rear platform,, and that they knew nothing of the boy’s presence until after he was hurt.
Counsel for plaintiff requested the following charges to the jury:
“ If the jury believe, from the testimony, that the plaintiff, James Healey, got upon the street car of the defendant for the purpose of selling newspapers, and after he was on the front platform of the car where the driver was, and was about to enter the car without paying his fare, and that the-car driver used excessive force and violence to put him off the car, or throw him off while the car was in motion, in such case the defendant would be liable for an injury to the-plaintiff' which was the result of such force and violence.”
The court overruled and refused to give the said instruction as written to the jury, tó which overruling and refusal the plaintiff made his exception.
The court qualified said instruction, and gave the same to the jury, as follows :
“ If the jury believe, from the testimony, that the plaintiff, James Healey, got upon the street car of tbe defendant for the purpose of selling newspapers, and after he was on the front platform of the car where the driver was, and was about to enter the car without paying his fare, and that the car driver used excessive force and violence-to push him off the car, for that reason, or threw him off while the-car was in motion, in such case the defendant would be liable for an injury to the plaintiff which was the result of such force and violence, provided the collection of the fare by the driver was part of his duty.”
' To which qualification, by adding the words “ for that reason,” after the word “ car,” and the words “ provided the collection of fare by the driver was part of his duty,” at the close of the charge, the plaintiff' made his exception, and excepted to the charge as given.
Plaintiff' further prayed the court to instruct the jury as follows:
*27 “If the jury find from the testimony that the ear driver had no right to demand the fare, yet from a wrong judgment on his part, he thought he had the right to demand fare from those on the front platform, and they fui’ther find from the testimony that he did demand the fare from James Healey, who refused, and then, without stopping the car, threw him off, and the injury complained of resulted therefrom; in such case the defendant would be held liable.for the injury caused to plaintiff by such act of the driver of the car,” which the court overruled and refused, and the plaintiff’ thereupon made his exception to the overruling' and refusing by the court to give said instruction to said jury.
The plaintiff further prayed the court to instruct the said jury as follows :
“ That the employment of a driver of a street car, when he occupies the front platform, and the conductor of the car occupies the rear platform, implies that the driver has-an authority over the persons who are found on his platform at the front of the ear, and his master would be liable-for any injury to them caused by his wrongful act, default, or carelessness, provided the persons injured were not equally in fault;” which instruction the court overruled and refused to give, as asked, to which overruling and refusing the plaintiff made his exception. Thereupon the-court qualified said instruction, and gave the same to the-.jury, as follows:
“ That the employment of a driver of a street car, where he occupies the front platform, and the conductor of the car occupies the rear platform, implies that the driver has an authority over the persons who are found on his platform at the front of the car, so far as the purposes of his employment are to be effected, and his master would be-liable for any injury to them caused by his wrongful act, default, or carelessness, provided the person injured were not equally in fault, and provided such wrongful act, default, or carelessness, occurs in the course and within the-scope of his employment; ” to which qualifications, by add *28 ing the words “ so far as the purposes of his employment are to be effected,” after the word car, and the words, “and provided such wrongful act, default, or carelessness, occurs in the course and within the scope of his employment,” at the close of said charge, the plaintiff' made his exception, and excepted to the said charge as given.
It is now well settled that, to make the master responsible for the act of the servant, it must be an act done in the course of his employment; that is, under the express or implied authority of his master; and thát, beyond the scope of such authority, the servant is as much a stranger to his master as any third person, and the act of the servant, not •done in the execution of the service for which he was engaged, can not be regarded as the act of the master.
If the act be one of omission or commission, whether negligent, fraudulent, deceitful, or wrongful, if it be done in the course of his employment, his master is responsible in a civil action to third persons.
In such cases, the maxim respondeat superior applies.
The rule of law thus stated is plain, but the difficulty arises in its application to the cases as they arise.
In making such application, it may safely be assumed that the servant is invested with authority to use the necessary means to the performance of the duties assigned to him, and that the character of the means will vary according to the nature of the duty to be performed, and the attending circumstances.
Did the court err in the application of these principles? The petition charged that plaintiff was injured through the ■carelessness and negligence of the servants of the company, in the running of their cars, by which he was thrown to .and upon the ground, while the car was in motion, and run over by the wheels of the ear. The proof of plaintiff' tended to show that the driver assumed to demand and ■collect fare, and upon non-payment, the plaintiff was shoved ■off, while the car was in motion, and run over.
This evidence was directly controverted, and each party *29 was entitled to instructions of law to the jury, based on what the evidence tended to prove.
The liability of the defendant depended on the acts or omissions of the driver alone. It is not claimed that any other servant of the railroad company knew of the matter until it was over, or that the company was otherwise responsible than for his acts.
The first charge, as modified and given to the jury under-exceptions by plaintiff, was doubtless an attempt to apply the rule in Little Miami R. R. Co. v. Wetmore, 19 Ohio St. 110, in which it was held that, for -wrongful acts done by a servant, not within the scope of his employment, his master was not liable. If the plaintiff’s right of action rested solely on what the driver did, while acting as a conductor, that is, if the injury arose from putting the plaintiff'off for non-payment of fare, then it might have been proper to-have given the charge as modified; but such -was not the aspect of the case, as shown by the pleadings or presented by plaintiff’s proofs.
By these, the plaintiff’s ease, if he made out one, and that was for the jury, rested on the claim that there was-negligence in running the cars while he was being thrown- or shoved off, by reason of which he was run over and injured.
The jury were told, that if it was within the scope of the driver’s employment to collect fare, and, for its non-payment, he had used excessive force and violence to put the-plaintiff off', or threw him off while the cars were in motion, the defendant was liable. This charge made the liability of the company to turn solely on the question of whether the collection of fare was part of his duty.
The converse of the proposition is, that if the collection of fare was no part of the driver’s duty, then the company was not liable, although he was thrown or shoved off for non-payment of fare while the car was in motion. The charge was, in effect, that however careless or negligent it may have been to thus eject a person while the car was in *30 motion, yet, as a rule of law, there could be no recovery, unless it was part of the driver’s duty to collect fare.
The charge, as given, took from the jury an important inquiry; that is, was the driver guilty of negligence and carelessness, as driver, in keeping the car in motion while the plaintiff was being ejected? Even though it may have been entirely proper to have put the plaintiff off the car, the manner of doing it, and circumstances under which it was done, if injury resulted therefrom, should have been left to the jury. If the collection of fare was not within the scope of his employment, and yet he assumed it, from whatever motive, that did not exonerate the company from injuries resulting from his acts as driver, within the scope-of his authority as such.
The authority, or absence of authority to collect fare, ■could not relieve the driver from want of proper care in the movements of the car, and within the scope of his employment.
If, in addition to his duties as driver, he was charged with the further duty of collecting fares at the front platform, and, for non-payment, might eject a passenger, it was a question of fact for the jury, to determine whether it was careless or negligent to do'so while the car was in motion ; but in the charge as given, the jury might well1 understand that notwithstanding there was negligence in so doing, yet there was no liability if it was no part of the driver’s duty to collect fare.
In Lovett v. Salem & South Danvers R. R. Co., 5 Allen, 557, it was recognized as a proper duty, while ejecting an intruder, to first stop the car or slacken its speed to such a degree that, using due care, he might leave safely.
In Murphy v. Union R. R. Co., 118 Mass. 228, it was held: “ If a passenger on a horse railroad is so intoxicated as to be offensive to the other passengers, the conductor has the right to remove him from the car; and whether it is due care, and a proper exercise of this right, for the conductor to attempt to remove him while the car is in motion, *31 is a question of fact for the jury, and not of law for. the ■court.”
In Wilton v. Middlesex R. R. Co., 107 Mass. 108, it was held : “ That if a person riding with due care on the platform of a horse car, not as a passenger for hire, but by invitation of the driver, and without collusion with him to defraud the corporation, is injured through his negligence in driving the car, the corporation is liable;” although it appeared that the driver had no authority to permit persons to occupy the platform, unless such authority be implied by the fact of his employment as driver; and although it also appeared that it was in violation of his instructions to permit persons to ride without payment of fare.
We do not undertake to say that the charges should have been given as requested, but we are clearly of opinion that, as modified, the first charge was misleading, and the refusal to give the second request may have tended further to the same end.
While the application of the general rules to particular cases is always attended with difficulty, yet, in this, as in most others, a few plain and simple principles underlie defendant’s accountability.
If, in the exercise of his employment, whatever its scope may have been, whether simply as driver in charge of the front platform of the car, or as both driver and conductor, he exercised due care and diligence, and injury resulted without his fault, in either or both capacities, his master is not liable. If, on the contrary, the injury resulted from the want of such care and diligence as driver, or from both, as conductor and driver combined, his master is liable.
In the aspect of the case as presented by the plaintiff’s evidence, and without expressing any opinion as to the weight of that evidence, we think there was error, not in refusing the first and second charges as requested, but in giving the first as modified. It took from the jury an important question of fact, and made the liability of the company to depend wholly on the fact whether it was part of his duty to collect fare.
*32 The judgment of the court below is reversed, and causo remanded.
Scott, Chief Judge, Day, "Wright, and Ashburn, JJ., concurred.