JOHN G. LOCKWOOD *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk. December 10, 1908. — January 6, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Negligence,* Street railway. *Carrier,* Of passengers. *Proximate Cause. Practice, Civil,* Conduct of trial. *Evidence,* Expert : opinion. *Witness.*

At the trial of an action against a street railway company to recover for injuries alleged to have been received by the plaintiff while he was a passenger upon an open electric car of the defendant and to have resulted from the car's negligently having been caused to come in collision with a wagon in the street, there was evidence tending to show that the plaintiff and a companion signalled from the sidewalk of a crowded street for the car to stop and, the motorman having inclined his head, started from the sidewalk, passed behind a wagon and, the car having stopped, got upon the running board ; that the wagon, which the plaintiff and his companion had passed behind to reach the car, continued on ahead of and in close proximity to the car and that both the conductor and the motorman saw it, that on a signal from the conductor, who had seen the plaintiff getting upon the car, the car proceeded before the plaintiff could take a seat, and the wagon struck the plaintiff's companion and knocked him against the plaintiff, who in the act of taking a seat had one foot on the car floor and one on the running board, and caused him to fall into the street. Subject to exceptions by the defendant, the presiding judge submitted the case to the jury, who found for the plaintiff. *Held,* that the exceptions must be overruled, since there was evidence from which the jury were warranted in finding that the plaintiff had been accepted by the defendant as a passenger and was in the exercise of due care, that the motorman and the conductor were negligent and that their negligence, in causing the plaintiff's companion to be knocked against him and thus to throw him from the car, was the proximate cause of the plaintiff's injury.

One, who has been accepted as a passenger upon an open electric car in a crowded street in a city and who is passing from the running board to a seat, has a right to assume that, while he is doing so, the car will not be started until all danger of its running so near to teams in the street as to injure him has passed.

The principle, applicable to railroad companies whose trains stop only at fixed stations, that they hold themselves out as carriers offering transportation only to such persons as present themselves in the usual way at stations, has not been applied to street railways whose operating companies have not promulgated a rule that passengers will not be taken on except at designated places.

The mere facts, that one boarded an open electric car while it was moving slowly and at a point between two of the regular stopping places of the car on a street crowded with traffic, will not preclude such person from recovering from the street railway company for injuries received by him by reason of the car's negligently being caused to run into too close proximity to a wagon in the street, if it also appears that he had been accepted as a passenger.

In determining whether or not an exception to a designated portion of a charge to a jury should be sustained, the charge should be considered as a whole, and, if as a whole it is legally correct and not likely to mislead the jury, the exception will be overruled although the portion objected to is open to deserved criticism.

One, who had been called to testify as a medical expert on behalf of the defendant at the trial of an action of tort for personal injuries, after having stated that he had examined the plaintiff just before the trial and had found that he was suffering from a marked case of nervous prostration, and that such a condition was a very unusual one after an accident, was asked by the defendant's counsel "What do you base your opinion on?" and replied, "In a long series of investigations made by me . . . I found that, outside of cases where there was litigation, accident produced nervous prostration in only about one half of one per cent." On motion of the plaintiff, that portion of the answer relating to litigation was struck out, and the defendant excepted. *Held*, that the exception must be overruled, since the witness could not, under the guise of reasons for his opinion, indirectly testify that the nervous prostration from which the plaintiff was suffering was due to his being the plaintiff in litigation seeking recovery for his injuries.

At the trial of an action against a street railway company for personal injuries suffered by the plaintiff while he was a passenger on a car of the defendant, a material question in issue was, whether the car was moving when the plaintiff boarded it. A witness for the defendant testified in direct examination that the car had stopped at a crossing before the point where the plaintiff had boarded it and had not stopped again until after the accident, and he identified a statement which he had received in blank from the defendant "afterwards" with a request to fill it out and mail it to the defendant. In cross-examination he stated that he was reading a newspaper at the time of the accident and did not think he noticed whether the car stopped or not after the crossing designated. In redirect examination, "as bearing on the question as to how soon his attention" was called to the matter after the accident, the defendant asked "And when you received that blank . . . were you asked to state whether the car was moving or standing when" . . . [the sentence was not completed.] The question was excluded and the defendant excepted. *Held*, that the exception must be overruled.

TORT for injuries alleged to have been received by the plaintiff while he was a passenger on an open electric street car of the defendant a short distance north of Essex Street on Washington Street in Boston, by being thrown from the car because

of a collision between it and a wagon in the street. Writ in the Superior Court for the county of Suffolk dated August 24, 1905.

This case and an action by the plaintiff's companion Gould against the defendant were tried together before *Raymond*, J.

Joseph W. Courtney, M.D., the defendant's medical expert, testified that he examined the plaintiff just before the trial and found that he was suffering from a marked case of nervous prostration. " Q. Whether or not such a condition as you found is an unusual thing ? A. After accident? Yes, very. — Q. What do you base that answer on ? A. In a long series of investigations made by me at the City Hospital I found that, outside of cases where there was litigation, accident produced nervous prostration in only about one half of one per cent." Upon objection by the plaintiff and subject to an exception by the defendant, the part of the answer about litigation was stricken out.

One Bretschneider, called by the defendant, testified in direct examination that he was a passenger on the car which the plaintiff boarded, that the car had stopped at Essex Street but did not stop again until after the accident. He also identified a blank that he had received from the defendant " afterwards" with a request to fill it out and mail it to the defendant. In cross-examination he testified in substance that he was reading his newspaper at the time the car passed Essex Street. " Q. So if you were reading the paper when the car passed Essex Street you would not notice whether the car stopped there or not ? A. No, sir, I don't think I did."

With regard to his redirect examination, the record stated as follows : " Q. Was your attention called to the question whether the car had stopped immediately before this accident? A. Before the car stopped my attention was taken. — Q. Before the car came to a stop ? A. Before the car came to a stop. — Q. And when you received that blank from the elevated were you asked to state whether the car was moving or standing when . . . (Objected to)."

" Mr. Dodge (the defendant's counsel) : Only as bearing on the question as to how soon his attention was attracted."

The evidence was excluded and the defendant excepted.

At the close of the evidence, the defendant requested the presiding judge to instruct the jury as follows:

" 1. On all the evidence your verdict must be for the defendant.

" 2. If you find that the car was moving when the plaintiffs boarded it, your verdict must be for the defendant.

" 3. There is no evidence in this case of negligence on the part of the motorman.

" 4. If the car was moving when the plaintiffs boarded it and had not reached the regular stopping place, your verdict must be for the defendant.

" 5. If the plaintiffs jumped on the car knowing that it was passing or about to pass the wagon, they cannot recover.

" 6. If the plaintiffs boarded the car while it was moving, they did not become passengers, and the defendant owed them only the duty of ordinary care.

" 7. If the plaintiffs passed around a moving wagon, close to the rear thereof, and jumped upon a moving car and immediately thereafter were injured through the contact of Gould with the wagon, they cannot recover.

" 9. If you find that the plaintiffs knew that the car was passing or was about to pass the wagon, then if their own failure to use their eyes and observe the location of the wagon contributed in any degree to the accident, they cannot recover.

" 10. If the car was moving and had not reached the white post when the plaintiffs boarded it, and if the motorman did not know they were getting on, they cannot recover.

" 12. If the plaintiffs boarded the car while it was moving and before it reached a regular stopping place, they did not become entitled to the rights of passengers."

The presiding judge refused to give the above instructions as requested. On the question whether or not the plaintiff was a passenger, he instructed the jury as follows:

" Was the plaintiff, or were the plaintiffs, passengers at the time of the accident? You heard the testimony with reference to that, the testimony on their part, that they signalled the car and the car came to a stop, as they were recognized by a servant of the company, and they crossed to the running board and stepped up on it, coming in contact with the car, and taking

hold of some part of the car to assist them to climb up on the running board. If you should find that those were the facts in the case, then I instruct you that the plaintiffs were passengers as soon as they came to the place where they took hold upon the car and attempted to step up upon the running board. If you should find that the plaintiffs signalled the car and the car checked its progress so that as reasonable men, seeing that they were recognized by the motorman or conductor, they should step over and take hold of the car to mount the car, even though the car had not come to a full stop, as soon as they took hold of the car and sought to climb upon the car, I instruct you that they would be passengers. On the question whether or not the car did check its headway at all, or whether it followed along the ordinary rate of progress that it had been following during the time previous to their signalling, there comes a closer question as to whether or not these parties were passengers at the time that they went upon the car. But I instruct you, gentlemen, in that regard, that if the car was following the slow rate of speed which has been testified by the parties here, both the parties here, that if the plaintiffs signalled the car and were recognized by the motorman or conductor or both in assent to their purpose to come upon the car, and following their recognition and the assent of the motorman or conductor to their coming upon the car and stepped up upon the running board, I instruct you that in that event they were passengers and were entitled to the rights of passengers. . . .

" If you should find that . . . the servants of the defendant company did not see them when they signalled the car or did not know that they were intending to come upon the car as passengers, and in no way either directly or indirectly, either expressly or by implication, assented to their becoming passengers upon the car, then you could find that they were not passengers, in which case the company, the defendant company, would not owe them the same degree of care that it would owe to passengers.

" I think there is no contention here that the parties were not seen at all by the conductor before they stepped upon the car. . . . My recollection is that there is testimony that the conductor did see these two men while they were approaching the car from the street, and then it would be for you to find whether by any

recognition he expressed an assent to their evident purpose to become passengers on that car. If you find that he did not in any way, you would have the right to find that they were not passengers. . . ."

Other facts are stated in the opinion. There was a verdict for the plaintiff, and the defendant alleged exceptions.

*R. G. Dodge,* (*S. H. E. Freund* with him,) for the defendant.

*J. E. McConnell,* (*J. W. McConnell* with him,) for the plaintiff.

BRALEY, J. The defendant's exceptions to the refusal to give the first, seventh, ninth, tenth, eleventh and twelfth requests must be overruled. It was within the province of the jury to find, upon conflicting evidence, that the plaintiff and his companion Gould, desiring to become passengers, signalled an open car; that, the motorman having inclined his head in response, they started from the sidewalk, and when the car stopped boarded it with the knowledge of the conductor, and that the plaintiff had reached and stood upon the running board on his way to a seat at the time of the injury. If the jury so found, the relation of passenger and carrier had been established, and the defendant owed to him the duty of taking every reasonable precaution, which might be required for his safe transportation. *Millmore* v. *Boston Elevated Railway,* 194 Mass. 323. *Rand* v. *Boston Elevated Railway,* 198 Mass. 569. *Marshall* v. *Boston & Worcester Street Railway,* 195 Mass. 284.

The conductor, while asserting in his testimony that the car had not been stopped nor the plaintiff been recognized and accepted as a passenger, also stated that he saw him when he boarded the car and that he noticed at the same time the proximity of the wagon passing along in the same direction parallel with the car, with which the car shortly after came into collision. If under these circumstances the conductor gave the signal, or the motorman in the exercise of due diligence should have foreseen that it was dangerous to go ahead, and the car was started before the plaintiff had a reasonable opportunity to reach a seat or a position of safety, this furnished evidence which would warrant a finding that the defendant was negligent. *Weeks* v. *Boston Elevated Railway,* 190 Mass. 563. *Rand* v. *Boston Elevated Railway,* 198 Mass. 569.

Nor could it have been ruled as matter of law, that the plaintiff was guilty of contributory negligence. If the plaintiff and his companion were believed, the team had passed them before they started from the sidewalk. Ordinarily the man of average prudence neither in taking steps to become, nor after he has been accepted as a passenger by a street railway, pauses deliberately to consider whether, under the usual conditions of public travel, the car will be so operated as to come into contact with a team which has just passed going in the same direction. A failure to take this precaution, while a matter to be considered by the jury, affords no conclusive presumption of carelessness. Apart from any knowledge he could have been found to have had of the closeness of the team to the running board owing to the street being crowded by traffic, the plaintiff also had a right to rely upon the assumption, that, while he was in the act of getting on and passing to a seat, the defendant's servants would not start the car until all danger of its running so near to the team as to injure him had passed. *Pomeroy* v. *Boston & Northern Street Railway*, 193 Mass. 507, 512.

It is further contended, that the efficient cause of the plaintiff's injury was the negligence of his companion, with whom he had boarded the car and who, having been first struck by the team while standing on the running board preparatory to taking a seat, was thrown against the plaintiff, forcing him against one of the stanchions from which he was thrown into the street. But, even if the contact of the plaintiff's companion indirectly forced him off, this fact was not an independent intervening cause which would exonerate the defendant, for, if the collision had not occurred through the defendant's negligence, the plaintiff would not have been injured. *Doe* v. *Boston & Worcester Street Railway*, 195 Mass. 168, 172. Besides, notwithstanding it is assumed to the contrary in argument, the defendant had the benefit of the eleventh request which was given in general terms.*

It is the defendant's theory of the injury, upon the evidence which it introduced, that, without having been either recognized or accepted as a passenger, the plaintiff was injured while in the

---

* This request was as follows : " If the proximate cause of Lockwood's injury was negligence on the part of Gould, then Lockwood cannot recover."

attempt to board a moving car as it was passing between the signal posts. Undoubtedly there must be an acceptance by the carrier, before the person who offers himself, becomes a passenger. But the principle as applied to those who offer themselves for transportation by railroads, whose trains stop only at fixed stations, where the carrier only holds itself out to receive and transport as passengers those who present themselves in the usual way, has not been held applicable to passengers upon street railways, unless at least it appears that the operating company makes a rule that passengers will not be taken on except at designated places. *Merrill* v. *Eastern Railroad*, 139 Mass. 238. *Webster* v. *Fitchburg Railroad*, 161 Mass. 298. *Corlin* v. *West End Street Railway*, 154 Mass. 197. There was no evidence offered by the defendant, that it had made, promulgated or enforced such a rule, or established such a custom. Nor did it appear that the plaintiff had any knowledge of such a regulation inferentially derived from his observation of the placing of signal posts, or of the manner in which its cars were generally operated. *McDonough* v. *Boston Elevated Railway*, 191 Mass. 509, 511.

But, even if the car had been boarded while it was moving slowly between the signal posts after the plaintiff had stepped on the running board, the conductor, who testified that he saw the men coming to get on the car and further said that he saw the plaintiff there, gave no order to him not to get on, and made no objection or dissent either verbally or by gesture that he was unlawfully on board. To remain standing on the running board of an open street railway car while being transported is not ordinarily of itself wrongful; and under these conditions the contract of carriage could have been found by the jury to have been complete. *Briggs* v. *Union Street Railway*, 148 Mass. 72, 75. *Pomeroy* v. *Boston & Northern Street Railway*, 193 Mass. 507, 511, and cases cited.

The exceptions to the instructions under which the case was submitted to the jury are also untenable. A charge is to be considered as a whole in order to determine whether it is legally correct, rather than tested by fragments, which may be open to deserved criticism. In presenting the two theories of the relation of the parties, after having stated the plaintiff's and the

defendant's respective contentions and instructed the jury as to each, the presiding judge continued, "If you should find that those circumstances did not exist, gentlemen, if you should find, for instance, that the servants of the defendant company did not see them when they signalled the car, or did not know that they were intending to come upon the car as passengers, and in no other way directly or indirectly, either expressly or by implication assented to their becoming passengers upon the car, then you could find that they were not passengers, in which case the company, the defendant company, would not owe them the same degree of care that it would owe to passengers. . . . If you find he did not in any way, you would have the right to find that they were not passengers." It is urged, that the jury should have been told, that, if they found no express or implied acceptance of the plaintiff as a passenger, they were bound to find for the defendant. The instructions, however, as to whether the plaintiff and the defendant had entered into this relation were explicit, and the jury must have understood fully that the plaintiff could not recover if he stepped and remained upon the running board without having been recognized by the servants of the company as a passenger.

The remaining exceptions are to the exclusion of evidence. If the defendant's medical expert could not properly have been directly asked, nor permitted to testify, that the nervous prostration from which he had found the plaintiff to be suffering was due to his having an action on hand to recover damages for personal injuries, he could not, under guise of reasons for the opinion which he gave in reply to a proper question, indirectly introduce such evidence. Having done so, the ruling excluding this part of the answer was right. *Hunt* v. *Boston*, 152 Mass. 168, 171. The paper containing the written statement, which at the defendant's request one of its witnesses presumably made on a blank furnished by the company, was rightly excluded, as there was no offer to show what the defendant expected to prove, or even that the witness, whom it apparently intended to contradict, had made a different answer, nor was the paper formally offered in evidence. *Magnolia Metal Co.* v. *Gale*, 191 Mass. 487.

*Exceptions overruled.*