JAMES W. MOAT *vs.* HAROLD A. MAGRATH.

Hampshire. September 18, 1935. — December 30, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Negligence,* Contributory, Motor vehicle.

It could not properly have been ruled as a matter of law that a plaintiff was guilty of contributory negligence, on evidence that the operator of a motor truck slowed it to about walking speed so that the plaintiff could get aboard; and that when the plaintiff had placed one hand on the·cab door and one foot on the running board, the other foot being "in the air," the operator, who knew or should have known of the plaintiff's position, increased speed suddenly so that the truck lurched violently and the plaintiff was thrown off and injured.

TORT. Writ dated August 3, 1932.

The action was tried in the Superior Court before *Broadhurst*, J. The verdict for the plaintiff was in the sum of $3,250.

The case was argued at the bar in September, 1935, before *Rugg*, C.J., *Pierce, Field, Lummus,* & *Qua*, JJ., and afterwards was submitted on briefs to all the Justices.

*D. H. Keedy*, for the plaintiff.

*H. I. Grousbeck*, for the defendant.

PIERCE, J. This is an action of tort to recover damages for personal injuries, sustained by the plaintiff while attempting to board a moving motor truck and alleged to have been caused by the defendant's negligent operation of it. The jury returned a verdict for the plaintiff, which was recorded subject to leave reserved under G. L. (Ter. Ed.) c. 231, § 120. Thereafter the presiding judge ordered entered a verdict for the defendant, and the plaintiff excepted.

The brief for the defendant makes no contention that the evidence did not warrant a finding of his negligence, and rests his support of the entry of the verdict upon the position "that the boarding of a moving truck is contributory negligence as a matter of law."

The evidence material to the issue in its aspect most favorable to the plaintiff in substance is as follows: The plaintiff and one Thornton on and prior to August 7, 1931, the day of the accident, worked for one Goodale in building an addition to Goodale's road stand or store and in putting a cellar foundation under that building. About a week before the accident Goodale employed the defendant, who was in the trucking business, to draw stone to be used in putting a cellar foundation under the whole building. Respecting this engagement Goodale, called by the plaintiff, testified: "I asked Magrath what it would cost to truck stone from the Hebert place in Pelham to my place in Amherst, and he said it would cost $24 a day for the large truck and $16 for the small one. . . . [Goodale said] I thought it was a pretty good price . . . [and Magrath said] 'I drive it myself . . . If I had some help, . . . we could make it worth while.' . . . [Goodale said]

I guess you can have help enough.  You can have George Thornton and William Moat . . . [and Magrath said] 'If I can have plenty of help I can make it worth while for you.'  So I engaged him to go ahead."

The plaintiff and Thornton were paid wages by Goodale, and under the said engagement the defendant was paid for the use of his truck and for his time by Goodale.  No contention is made that the plaintiff or Thornton was directly or constructively employed by the defendant to assist him in gathering or transporting the stone.  Before the defendant came with his truck Goodale had a talk with Thornton and the plaintiff and told the plaintiff, in substance, that he was to go out to the Hebert place with him and the defendant to get stone.  When the defendant came with his truck to Goodale's, in Amherst, Goodale and Thornton got on and the truck was then driven by the defendant two and one half miles to the Hebert place, passing en route the plaintiff's home where it was stopped for him to get on.  After the truck was loaded with stone at the Hebert place, Goodale and the plaintiff got on it and rode to Goodale's house in Amherst.  After dinner with Goodale, the plaintiff returned on the defendant's truck to the Hebert place.  The defendant drew stone a couple of days, Thornton getting on the truck as on the first day at Goodale's and the plaintiff at his own place half way on the road to the Hebert place, and then waited until the following week.  Meantime, Thornton with the help of the plaintiff, laid the cellar wall.

On the morning of the accident, which was the third day of the work, the defendant, as on other days, met the plaintiff at his home and carried him with Thornton in his truck to a stone wall on Hebert's premises.  After the truck was loaded and had gone to Goodale's place to discharge the load the plaintiff remained at the stone pile for a while and then went to Hebert's house, four or five hundred feet distant, for a drink.  After getting the drink he came out of the house and heard the truck coming.  It was some distance away.  He then walked to the road, which is a narrow country road, and waited for it there.  The defendant

testified, in substance, that, when he was about two hundred feet from the driveway to Hebert's, he saw the plaintiff running across the lawn to the roadside. The defendant's truck was then going at about twenty miles an hour. He knew that the plaintiff meant to get on the truck and he applied his brakes intending to stop for him. He slowed down to about three miles an hour, "a little faster than a walk," to allow the plaintiff to get on the running board, the seat in the cab being occupied by him on the left and by Thornton on the right. He could see the running board from his seat and he saw it that day. He saw what the plaintiff did, saw him attempt to board the truck, reach in and take hold of the cab door with his hand, spring for the running board and get his left foot upon it while his right foot was in the air. The evidence warranted a finding that while the plaintiff was in the insecure position above described, the truck suddenly lurched and threw him off, to his serious injury; and it warranted the further finding that the lurch was violent and was due to the defendant's "stepping on the gas," he supposing that the plaintiff had got on.

On the above evidence it is plain the jury were warranted in finding that the plaintiff, at the implied invitation of the defendant, got or attempted to get on a truck moving a little faster than a walk, and that the defendant increased the speed of his truck suddenly and violently with a lurch while the plaintiff was in an unstable position which was known or should have been known to the defendant.

At the trial, with the express assent of the defendant, the presiding judge charged the jury: "I am told now that no contention is made either that the plaintiff was the guest of the defendant or the employee of the defendant, so that the case goes to you on the question simply whether or not the defendant was careless in the way he managed the truck after the plaintiff attempted to get aboard of it, and whether or not the plaintiff himself acted as a reasonably careful and prudent man would have acted, or whether on the other hand he too was careless. . . . It's simply a case where one man invites another to ride on his car with him

and owes him a duty to give him a reasonable chance to get aboard, and thereafter to manage the car as a reasonably careful man would, the passenger himself being also under a duty to use reasonable care in the manner in which he attempted to board the car." As above stated, the defendant makes no contention in his brief that he was not "careless in the way he managed the truck after the plaintiff attempted to get aboard of it." It follows that the only question for decision is, Was the plaintiff guilty of contributory negligence as a matter of law on the evidence shown by the record?

Assuming a finding of the jury that the defendant negligently "stepped on the gas" and suddenly, without warning, accelerated the speed of the truck, and that the sudden and unexpected increase in speed caused it to lurch and thereby cast the plaintiff from it to his physical harm, we think it should not have been ruled that the plaintiff was guilty of contributory negligence as matter of law, and that the evidence presented an issue of fact for the jury. *Briggs* v. *Union Street Railway,* 148 Mass. 72, 74, 75. *O'Connor* v. *Hickey,* 268 Mass. 454, 458, 459. *O'Connell* v. *McKeown,* 270 Mass. 432, 435. *Brown* v. *Henderson,* 285 Mass. 192.

The case was rightly submitted to the jury. The entry of a verdict for the defendant on leave reserved was error. It follows that the plaintiff's exceptions are sustained and that judgment should be entered for the plaintiff on the verdict.

*So ordered.*